# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No.: 1:16-CR-211 (RBW) |
| v. : | |
| : | **UNDER SEAL** |
| HUWIDA FADL : | |
| : | |
| Defendant. : | |

## UNITED STATES' MOTION TO COMPEL DEFENDANT TO PRODUCE DISCOVERY AND CONFIRM THE ISSUES TO BE ADDRESSED AT THE EVIDENTARY HEARING ON DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAM

Defendant Huwida Fadl ("defendant") refuses to comply with this Court's order of August 19, 2020, Federal Rule of Criminal Procedure 16, and other applicable law and produce discovery relevant to her ineffective assistance of counsel ("IAC") claim. Defendant also refuses to stipulate to the issues to be addressed at the evidentiary hearing on her IAC claim. With this motion, the United States, by and through its attorneys, the Money Laundering and Asset Recover Section, Criminal Division, United States Department of Justice, requests that the Court order defendant to end her gamesmanship and immediately produce discovery to the United States. The United States also requests that the Court enter an order specifying the issues to be addressed at defendant's evidentiary hearing to prevent defendant from using the hearing to litigate issues that are not relevant her IAC claim.

I.  **BACKGROUND**

A.  **Defendant's Briefs**

On December 19, 2016, defendant pleaded guilty to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). Dkt. # 7-8. On March 8, 2019, the Court sentenced defendant to twelve months and one day in prison, three years of supervised release,

and a special assessment of $100, and ordered defendant to make over $1.3 million in restitution to the Kuwait Embassy, the victim of her offense.

After the Court imposed its sentence, on March 12, 2019, defendant filed a notice of appeal.  Dkt. #32.  Several months later, on November 15, 2019 and February 20, 2020, defendant filed her opening and reply briefs (collectively the "Briefs"), respectively, with the United States Court of Appeals for the District of Columbia.  In her Briefs, defendant accused her trial counsel, Atiq R. Ahmed, of providing her with constitutionally deficient counsel by failing to abide by *Padilla v. Kentucky*, 559 U.S. 536 (2010), and advise her of the immigration consequences of her guilty plea.  Among the accusations defendant levied against Mr. Ahmed were that he "never told her . . . that she would be deported if she pleaded guilty to conspiracy to commit money laundering"; that he did not provide her with an Arabic translation of her plea agreement; that "[s]he never received a complete copy of the plea agreement until the day she pleaded guilty, and [the plea agreement] was never translated for her before the plea hearing"; that Mr. Ahmed "was unaware of the immigration consequences of a conviction, including deportation, and accordingly did not attempt to negotiate an immigration-friendly outcome for the defendant nor advise her that she would be subject to deportation if convicted of conspiracy to commit money laundering"; and that "[Mr. Ahmed] did not discuss [with defendant] immigration consequences whatsoever and [the immigration consequences of defendant's plea were] never mentioned until her plea hearing and by the Judge, not [by Mr. Ahmed]."  Opening Br. at 3-4, 9-10; Reply Br. at 1, 7-13.

### B. The D.C. Circuit's Judgment

On July 7, 2020, the D.C. Circuit filed an unpublished *per curiam* judgment remanding defendant's IAC claim to the Court for an evidentiary hearing to determine whether defendant

can satisfy the burden placed her on by *Strickland v. Washington*, 466 U.S. 688 (1984) and prove that Mr. Ahmed provided her with constitutionally deficient counsel. *In re Sealed Case* (D.C. Cir. No. 19-3018, filed March 12, 2019, judgment July 7, 2020) (the "Judgment"). According to the D.C. Circuit, it could not reach a decision on whether defendant had passed the first prong of the *Strickland* test because the trial record did not "conclusively establish" the sufficiency of Mr. Ahmed's performance. *Id.* at 2. For example, the D.C. Circuit found that the record was "inconclusive regarding: "(1) what, if anything, [Mr. Ahmed] conveyed to [defendant] regarding the deportation consequences of the plea during negotiations; (2) whether [defendant] received a translated copy of the entire plea agreement; and (3) whether [Mr. Ahmed] was even personally aware of the deportation consequences of the plea during negotiations." The D.C. Circuit determined that further development of the trial record was needed to determine "whether [Mr. Ahmed's] assistance complied with *Padilla*" and answer defendant's "assertions about translations and [Mr. Ahmed's] personal knowledge" of the immigration consequences facing defendant. *Id.* at 3.

"As to *Strickland's* second prong," the D.C. Circuit found that "the record [did] not conclusively establish that [defendant] did not suffer prejudice as a result of [Mr. Ahmed's] allegedly deficient performance," *id.*, and ordered the Court to engage in "[f]urther fact-finding . . . to determine whether [defendant] ever received a translated version of the full PSR, whether [defendant was] otherwise made aware of its statements regarding deportation implications, and whether the PSR's statements are sufficient to cure any prejudice." *Id.* at 4.[1] The D.C. Circuit found that "[t]he same was true for comments made by the District Court at the sentencing hearing," and ordered the Court to use the evidentiary hearing to answer the "questions around

---

[1] One judge on the panel dissented, finding that the trial record "conclusively show[ed] that [defendant] suffered no prejudice" and, therefore, her IAC claim was "without merit." *Id.* at 6.

3

what exactly was translated or otherwise communicated to [defendant about the immigration consequences of her plea] and when," whether Mr. Ahmed deferred discussion of the immigration consequences facing defendant to her immigration attorney, and whether defendant "never would have accepted a guilty plea had [she] known that [she] would be deported and would have chosen instead" to have gone to trial.  *Id.* at 4-5.

### C. The Proceedings on Remand

On August 19, 2020, the Court granted a motion filed by the United States and entered an order (the "Order) finding that defendant waived the attorney-client privilege when she accused Mr. Ahmed of ineffective assistance of counsel.  Among other things, the Court ordered Mr. Ahmed and any other person acting on defendant's behalf in this case to "disclose otherwise confidential or privileged information in communicating with the United States about [Mr. Ahmed's] representation of the defendant as it relates to the defendant's ineffective assistance of counsel claims" and "provide to the United States any relevant documents in their actual or constructive possession or that are otherwise available to [Mr. Ahmed] or any other person acting on the defendant's behalf in the above-captioned case."

A few days later, on August 24, 2020, defendant contacted the United States by email and telephone.  Exhibit 1 at 1.  Defendant represented that Mr. Ahmed had provided her with little to no discovery from her case, and asked the United States to provide her with the discovery that it had produced to defendant and her co-defendants.  *Id.* at 30-38.  Defendant also represented that she had been interviewed by "Homeland Security," and asked the United States to identify the lead law enforcement agent who interviewed her.  The United States agreed to provide defendant with discovery and gave her the name of the case agent.  *Id.*

4

One day later, on August 25, 2020, defendant sent an email to the United States thanking the United States "for taking my call yesterday" and stating that she "did not receive ANY reports/discovery from" Mr. Ahmed. *Id.* at 2. Defendant stated further that her email was "a formal request for the discovery that 1. Turned over previously [sic] and 2. Are required [sic] to be disclosed under rule 16." According to defendant, "[t]his of course would include any statements [she] made in the debriefings conducted by homeland security. My understanding is that there were at least 3 such meetings." *Id.*

While the United States was in the process of honoring the representations that it made to defendant on August 24, 2020, which included gathering far more than simply three reports of interviews with defendant, on August 28, 2020, defendant filed a discovery letter with the Court claiming that she had not heard from the United States about her August 24, 2020 discovery request and, therefore, she was filing her discovery letter to request that the United States produce the discovery that it had already agreed to produce to defendant on August 24, 2020. *Id.* at 3-25. Defendant's August 28, 2020 discovery letter also made several other discovery requests that either had nothing to do with or were not applicable to the procedural posture of her case. *Id.*

Immediately after defendant filed her discovery letter, on August 28, 2020, the United States requested that defendant provide it with reciprocal discovery pursuant to the Court's Order and Rule 16. *Id.* at 26. The United States requested, among other things, "all email, text and other communications between [defendant], anyone acting on [defendant's] behalf, such as members of her family, and her prior counsel, Atiq Ahmed." The United States also requested that defendant produce "any notes [of] any kind that [defendant] or anyone acting on her behalf made of or about any meetings or communications with Mr. Ahmed." In response, defendant

represented that she would be "[h]appy to provide what I have" and "ask her family members for such communications and . . . turn them over promptly." *Id.* at 27-28.

On August 31, 2020, the United States filed its response to defendant's August 28, 2020 discovery letter. *Id.* at 29-34. The United States corrected misrepresentations in defendant's August 28, 2020 discovery letter and summarized the discovery it was producing to defendant with its letter. The United States also reiterated its request for reciprocal discovery. The United States asked defendant to produce, among other things, her communications with Mr. Ahmed as well as any communications defendant had with anyone about (a) Mr. Ahmed and his representation, (b) her IAC claim and the facts and circumstances underlying or relevant to her claim, (c) the deportation consequences of a criminal conviction in her case, (d) her desire to resolve her criminal case either by cooperating with the United States or going to trial, (e) being innocent of or having a defense to her offense of conviction or any other criminal charges arising from her case, and (f) Arabic translations of her plea agreement. *Id.* at 32-34. The United States also requested that defendant produce copies or drafts of any Arabic translations of her plea agreement that were in her actual or constructive possession or in the actual or constructive possession of any of her family members, friends, acquaintances, associates, agents, or co-conspirators along with any notes that she or these other individuals took of any meetings or conversions with Mr. Ahmed. The United States requested that defendant provide it with reciprocal discovery by September 4, 2020. *Id.*

One day later, on September 1, 2020, the United States filed a second discovery letter with the Court in which it summarized additional discovery that it was producing to defendant with its discovery letter. *Id.* at 39-42.

Contrary to the representations that defendant made to the United States on August 28, 2020, defendant did not produce "what I have" to the United States, and September 4, 2020 came and went without defendant producing discovery to the United States.

On September 7, 2020, the Court held a status conference. During the status conference, the United States asked the Court to confirm that the scope of the evidentiary hearing would be limited to the issues identified by the D.C. Circuit in its Judgment. Defendant refused to agree on the issues to be addressed at the evidentiary hearing, claiming that she needed to review the discovery produced by the United States. Surprising, defendant also represented that she was not prepared to proceed with the very evidentiary hearing that she had requested on appeal, again claiming that she needed time to review the discovery produced by the United States. Given defendant's representations, the Court vacated her September 14, 2020 evidentiary hearing and scheduled a status conference for October 7, 2020.

In an attempt to reach an agreement on the issues to be addressed at the evidentiary hearing and the witnesses who would be called to present evidence on those issues, on September 8, 2020, the United States provided defendant with a list of the issues identified by the D.C. Circuit in its Judgment, and asked defendant if she would stipulate to the issues to be addressed at the evidentiary hearing. *Id.* at 45. Rather than engage the United States in a good faith discussion of the issues to be addressed at the evidentiary hearing, defendant replied that "[t]his isn't my first rodeo," and refused to discuss a stipulation with the United States, claiming that she needed to review all the discovery produced by the United States. *Id.* at 46-54.

On September 30, 2020, defendant emailed the United States and inquired about an interview with defendant that she believed occurred on April 15, 2015. *Id.* at 55. The United States replied, indicating that it had provided defendant with a report of an interview conducted

7

with defendant on April 14, 2015.  *Id.* at 56.  When defendant responded that "[t]he notes from Mr. Atiq R. Ahmed clearly say April 15, 2015," the United States requested that defendant immediately produce Mr. Ahmed's notes.  *Id.* at 56-57.

Defendant replied, "They are not notes per se, as in handwritten, but a memo," and dismissed the United States' request for reciprocal discovery, telling the United States that Mr. Ahmed "should have given that all to you long ago."  *Id.* at 63.  Defendant than cited the United States to Rule 16 and advised that she would produce the documents that she intended to use at the evidentiary hearing, but that she had "not decided yet what [she was] going to use as [she was] still going thru" the discovery.  *Id*. at 57-*59.*  The United States reminded defendant that her discovery obligations were independent from those of Mr. Ahmed, and that the Court's Order and Rule 16 required her to provide the United States with full and complete discovery.  *Id.* at 60. However, true to form, defendant responded that she "disagree[ed].  It's not open discovery even though the privilege has been waived" – a position that directly contradicted the representations that defendant made to the United States on August 28, 2020.  *Id.* at 27, 60.

This motion followed.

## II.     ARGUMENT

### A.     The Court Should Order Defendant to End Her Gamesmanship and Produce Discovery to the United States

To date, defendant has not produced *any* discovery to the United States.   On August 28, 2020, defendant represented that she would produce "what I have" to the United States and "turn . . . over promptly" discovery from defendant's family members and others that was relevant to defendant's IAC claim.  *Id.* at 27.  Defendant also did not object to the reciprocal discovery requests that the United States made on August 31, 2020.  Nevertheless, defendant now claims that she is not required to produce discovery beyond those documents that she intends to use at

8

the evidentiary hearing and that "[i]t's not open discovery even though the privilege has been waived." *Id.* at 57-60.  Defendant's refusal to produce discovery or abide by the Court's Order or Rule 16 along with her contradictory representations to the United States about the discovery that she will produce and when she will produce it are clear evidence that the defendant is playing games with discovery.

Defendant is the plaintiff in this proceeding.  She chose the type of the claim that she would assert on appeal and at the evidentiary hearing, and the specific allegations that she would make against Mr. Ahmed.  Defendant bears the burden of proving these allegations. *See Strickland v. Washington*, 466 U.S. 668, 687-688, 694 (1984); *United States v. Newman*, 805 F.3d 1143, 1147 (D.C. Cir. 2015).  Of the parties, defendant is in the best position to know the evidence that supports her allegations as well as evidence that shows what actually transpired between her and Mr. Ahmed.  Rather than produce this evidence to the United States, defendant wants to ignore the Court's Order and use Rule 16 as both a sword and a shield, obtaining discovery from the United States while refusing to produce discovery to the United States and trying to limit the scope of whatever discovery she may later decide to produce.  Just like the United States cannot pick and choose what discovery it produces to defendant in a criminal case, defendant cannot pick and choose what discovery she produces to the United States at the evidentiary hearing – particularly when defendant asked for and received broad and prompt discovery from the United States.  *See* Fed.R.Crim.P 16(b)-(d); *cf. United States v. Balistrieri*, 606 F.2d. 216, 221 (7th Cir. 1979) ("Rule 16 . . . is an unsatisfactory vehicle for discovery requests in proceedings on [collateral] motion[s].  Facts which affect the validity of the conviction or sentence are unlikely to be found solely within the narrow scope of discovery allowed by Rule 16."); *United States v. Estremera*, 531 F.2d 1103, 1112-1113 (2d Cir. 1976)

(adopting "a more liberal and practical interpretation" of defense's discovery obligations under Rule 16 and affirming district court's decision to grant government motion for reciprocal discovery because "[t]he government's voluntary turnover of desired material to defendant must be deemed to have been based upon the implied condition that the defense would reciprocate . . . ."). Fairness, as well as defendant's obligation to assist the Court in its search for the truth and find the facts that it needs to reach a just decision on her IAC claim, demand that defendant produce full and complete discovery to the United States, including any discovery that may undermine her IAC claim.

Defendant cannot shift her responsibility for producing discovery to Mr. Ahmed. Mr. Ahmed's discovery obligations spring only from the Court's Order – not from Rule 16 or any other procedural rules or case law that govern defendant's discovery obligations. Defendant is required to produce any evidence relevant to her IAC claim that she received from Mr. Ahmed even if the Court's Order required Mr. Ahmed to produce that same evidence to the United States. The discovery that defendant received from Mr. Ahmed may be different from the discovery that Mr. Ahmed produces to the United States. For example, while Mr. Ahmed has produced some notes and documents to the United States, to the best of the United States' knowledge, he has not produced the "memo" that defendant referenced in her September 30, 2020 email, a memorandum that defendant stated was not "notes." As the party who bears the burden of proof in this case and is in the best position to know all the facts relevant to her IAC claim, including what Mr. Ahmed actually told her about the immigration consequences of her plea, the Court should order defendant to end her gamesmanship and produce full and complete discovery to the United States.

### B.     The Court Should Limit the Scope of the Evidentiary Hearing to the Issues Identified by the D.C. Circuit's Judgment

Defendant's refusal to agree on the issues to be addressed at the evidentiary hearing is further evidence of her gamesmanship in this case. Defendant has known for over a year the issues that she would need to address if she convinced the D.C. Circuit to remand her IAC claim for an evidentiary hearing. As discussed above, defendant bears the burden of proof at the evidentiary hearing, *see Strickland*, 466 U.S. at 687-688, 694; *Newman*, 805 F.3d at 1147, and, therefore, she should have already had the evidence that she needed to prove her claim when she filed her notice of appeal in March 2019 or, at the latest, in November 2019, when she filed her Opening Brief. Defendant chose the issues to be addressed at the evidentiary hearing by alleging them in her Briefs, and the D.C. Circuit refined those issues in its Judgment. Defendant should not need to review the entirety of the discovery produced by the United States to agree that the scope of the evidentiary hearing should be limited to the issues identified by the D.C. Circuit in its Judgment. Defendant's refusal to do so is simply a delay tactic and suggests that she intends to use the discovery produced by the United States to litigate issues not relevant to her IAC claim. The Court should prevent defendant from doing so and limit the evidentiary hearing to the issues identified by the D.C. Circuit in its Judgment.

//

//

//

## III. CONCLUSION

The United States requests that this Court issue an Order: (1) requiring defendant to provide immediately full and complete discovery to the United States and to continue to do so as defendant discovers relevant evidence; (2) and limiting the scope of the hearing to the issues identified by the D.C. Circuit in its Judgment.

A proposed Order is attached.

                              Respectfully submitted,

                              DEBORAH CONNOR, CHIEF
                              MONEY LAUNDERING & ASSET
                              RECOVERY SECTION

By:     _____/s/_____
            JONATHAN T. BAUM
            Senior Trial Attorney, Criminal Division
            Money Laundering and Asset Recovery Section
            United States Department of Justice
            1400 New York Avenue, NW
            Bond Building, Suite 9104
            Washington, DC 20005
            Telephone: (202) 616-9628
            Email: jonathan.baum@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 6th day of October 2020, I caused a copy of the foregoing motion and proposed order to be served by electronic mail on defendant's counsel:

Kira Anne West
Law Office of Kira Anne West
1325 G Street N.W., Suite 500
Washington, D.C. 20005
Telephone: (202) 236-2042
Email: kiraannewest@gmail.com

                                        ___/s/_____
                                        Jonathan T. Baum
                                        Senior Trial Attorney, Criminal Division
                                        Money Laundering and Asset Recovery Section
                                        United States Department of Justice