UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No.: 1:16-CR-211 (RBW)** |
| v. | : | |
| | : | **UNDER SEAL** |
| **HUWIDA FADL** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' MOTION TO ADMIT EVIDENCE**

COMES NOW, the United States of America, by and through its undersigned attorneys, the Money Laundering and Asset Recovery Section, Criminal Division, United States Department of Justice and moves to admit the documents attached to the June 7, 2016 email contained within Government Exhibit ("GEX") 9 and, to the extent the Court struck them from evidence, the United States asks the Court to reconsider the admissibility of GEXs 42-62 and 75.

**I.    BACKGROUND**

GEX 9 is an email dated June 7, 2016 from Marie Dalton to Atiq Ahmed. As Ms. Dalton testified at the evidentiary hearing, she used this email to send discovery to Mr. Ahmed and attached several documents to her email. The documents that Ms. Dalton attached to her June 7, 2016 email were: (a) reports written by Special Agent Brendan Shelley of interviews that he and other agents conducted with defendant Huwida Fadl ("defendant") on April 6, 2015, April 14, 2015, February 26, 2016, February 29, 2016, March 1, 2016, March 2, 2016, and March 21, 2016; (b) Criminal Complaints and supporting affidavits for money laundering charges brought under 18 U.S.C. § 1956(h) against defendant's co-conspirators, Hanan Al Sharaf and Walid Aly; (c) an affidavit in support of a Criminal Complaint alleging violations of section 1956(h) against another co-conspirator, Wael Sedik; checks written to defendant by "Hopiken Medical Service

Int" ("Hopiken") which was one of the shell companies that defendant and her co-conspirators used to embezzle money from the Kuwait Embassy Health Office, along with the back of the checks showing that defendant cashed them; (d) checks written to defendant by "DBA MedStar Health & Transportation Service ("MedStar")," which was the shell company owned by defendant's brother, along with the backs of the checks showing that defendant cashed them; and (e) a deposit slip showing that defendant deposited a check from the Kuwait Embassy Health Office into MedStar's bank account.

The documents marked as GEXs 43-62 and 75 are forms that defendant completed or signed when she worked at E&R Home Care as a personal care attendant.  (GEX 43 is a certificate that defendant provided to E&R Home Care showing that she had completed a Certified Nursing Assistance Education Program.)  All of these forms are in English and, in sum, discuss defendant's legal rights and obligations as an employee of E&R Home Care, her job description and requirements, and waivers and releases that she provided to E&R Home Care.

As set forth in the "United States' Report to Clarify the Record on Government Exhibit 9" ("Report"), prior to the start of the evidentiary hearing, the United States produced GEXs 9, 43-62, and 75 to defendant twice – first in November 2020 (electronic copy) and again on April 13, 2021 (hardcopy).  The parties included GEXs 9, 43-62 and 75 on the Joint Exhibit List ("JEL") that they filed with the Court on April 14, 2021.  In the JEL, the parties represented that they "agree[d] to the admission of all of the exhibits listed on the Joint Exhibit List."  JEL at 1.  The only exhibits that the parties agreed would not be admitted into evidence were GEXs 80-93, which were reports of interviews ("ROIs") that Special Agent Shelley conducted with defendant along with the ROIs of the proffer sessions that defendant attended with the United States.  *Id.* at 12 n.1.

On April 19, 2021, before defendant began her case-in-chief, defendant moved GEXs 9, 43-62 and 75 into evidence along with all of the other exhibits on the JEL, but for the first time raised an objection to the introduction of the ROIs attached to the June 7, 2016 email within GEX 9.  The hearing commenced, and to the best of the United States' recollection, both parties used GEX 9 in their witness examinations.  The United States also used GEXs 53 and 54 during its examination of defendant.

A few days later, on April 21, 2021, defendant objected to the introduction of *all* the documents that were attached to the June 7, 2016 email from Marie Dalton to Atiq Ahmed, claiming that she did not receive GEX 9 until the last minute and that she never agreed to the introduction of the documents attached to Ms. Dalton's June 7, 2016.  However, defendant did not object to the introduction of the June 7, 2016 email.

The United States countered defendant's representations by filing the Report, which showed that the United States first produced GEX 9 to defendant approximately five months before the start of the April 19, 2021 evidentiary hearing and again six days before the hearing.  Report at 1-6 & Exhibits 1-10.  The Report also showed in the weeks leading up to the April 19, 2021 evidentiary hearing, defendant never objected to GEX 9 or to any of the other exhibits on the JEL, including GEXs 43-62 and 75, and represented to the United States that with the exception of GEXs 80-93, she agreed to the introduction of all of the exhibits on the JEL.  *Id*.  The United States prepared its case and developed its witness list based on the representations that defendant made to the United States about the admissibility of the United States' exhibits on the JEL.

On April 23, 2021, defendant objected to the introduction of GEXs 43-62 and 75, arguing for the first time that the English-language forms from E&R Home Care that defendant

3

completed or signed were not relevant. The Court overruled the objection, stating that it would permit the exhibits to stay in evidence, but give little weight to them because the E&R Home Care representative who reviewed the documents with defendant did not testify. To the best of the United States' recollection, defendant then moved to "strike" GEXs 43-62 and 75. The Court appeared to grant defendant's request before ending the hearing and leaving the bench.

## II.     ARGUMENT

### A.     The Court Should Admit the Documents Attached to the June 7, 2016 Email from Marie Dalton to Atiq Ahmed That is Contained in GEX 9

The Court should admit the documents attached to the June 7, 2016 email in GEX 9 because they are directly relevant to defendant's claims that Mr. Ahmed never warned her of the deportation consequences of her plea, that she would have gone to trial had he advised her of those consequences, and that "she could have easily advanced a defense of duress." Brief ("Br.") at 3 ("Ms. Fadl was never told by her lawyer that she would be deported if she plead guilty to conspiracy to commit money laundering."), 13 ("Alternatively, she may have decided to risk going to trial given the severity of the deportation consequences facing her."); Reply Br. at 12 ("The evidence against her is simply not overwhelming, and she could easily have advanced a defense of duress.");[1] Fed.R.Evid. 401; *Missouri v. Frye*, 566 U.S. 134, 148 (2012) ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.") (internal citations omitted); *United States v. Hanson*, 339 F.3d 983, 990-991 (D.C. Cir. 2003) (to establish prejudice, a defendant "does not need to show that he would have *prevailed* at trial,

---

[1] Defendant's opening and reply briefs appear on the JEL as GEXs 70 and 94, respectively. The page numbers referenced above are those from the briefs, not the page numbers of GEXs 70 and 94, which included the Certificate As to the Parties, Rulings and Related Cases and the Tables of Contents and Authorities.

4

only that there was a reasonable probability that he would have *gone* to trial. But any rational decision regarding the latter would have required a realistic assessment of the former") (internal citations and quotations omitted) (emphasis original).

      Mr. Ahmed testified that he used the documents that Ms. Dalton sent him on June 7, 2016 to prepare for his first meeting with Ms. Fadl on June 16, 2016. According to Mr. Ahmed, the documents that Ms. Dalton sent him on June 7, 2016 put him on notice that defendant was not a U.S. citizen and had immigration charges pending against her, which caused him to advise defendant that she faced deportation from the United States if she was convicted of the section 1956 and 18 U.S.C. § 1343 offenses referenced in the May 26, 2016 letter that defendant received from Special Agents Shelley and Michelle Dowling.

      Mr. Ahmed also testified that the documents attached to Ms. Dalton's June 7, 2016 email informed his assessment of whether he had viable legal grounds to challenge the prior statements that defendant had made to law enforcement and factored into his decision to permit defendant to continue to cooperate with law enforcement and debrief with the United States on June 17, 2016 – a decision Mr. Ahmed acknowledged usually militated against him advising his clients to testify at trial on their own behalf. Additionally, Mr. Ahmed testified that the documents attached to Ms. Dalton's June 17, 2016 email helped him identify Sara Kassem, who attend the June 16, 2016 meeting with Ms. Fadl, as a potential co-defendant, which caused him to be mindful of what he said to defendant while Ms. Kassem was present.

      Thus, it is clear that the documents attached to Ms. Dalton's June 7, 2016 email – none of which are being offered for the truth of the matters asserted in those documents – are admissible not only because they are relevant to the very issues defendant raised in her appellant briefs, but because they are relevant to Mr. Ahmed's state of mind and provide critical background

5

information that place in context Mr. Ahmed's June 16, 2016 meeting with defendant and his and others' subsequent actions in the case. *See* Fed.R.Evid. 801(c); *United States v. Williams*, 358 F.3d 956, 963 (D.C. Cir. 2004) ("[An out-of-court] statement may be admitted to serve a non-hearsay purpose . . . such as elucidating a speaker's or a listener's state of mind, or providing background information.") (internal citations omitted); *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002) ("An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c)."); *United States v. Baird*, 29 F.3d 647, 653 (D.C. Cir. 1994) (admitting statements defendant's commanding officer relayed from Coast Guard legal and contracting officers to defendant because the statements from the legal and contracting officers were not offered for their truth but to establish defendant's state of mind).

Defendant responded to the Report that the United States submitted to the Court by arguing that the documents attached to Ms. Dalton's June 7, 2016 email should not be admitted because (a) when defendant "received the hard copies of the [United States'] exhibits, it was over the weekend immediately before the hearing and therefore notified [sic] the [United States] of her objection to Exhibit 9 before the hearing started the morning of April 19, 2021"; (b) the description of GEX 9 on the JEL "does not describe that there is an attachment [to GEX 9] and what it is"; and (c) insufficient foundation existed to admit the documents attached to Ms. Dalton's June 7, 2016 email because "[defense] counsel never received the attachments to exhibit 9 from Mr. Ahmed, but from the Government before the November 17, 2020 hearing." Def. Response to United States' Report on Govt's Ex. 9 at 1-2.

Defendant's claims are belied by the record. First, as defendant concedes, she has had GEX 9 since November 2020 and has had approximately five months to review the exhibit.

6

Second, defendant received a hard copy of GEX 9 on April 13, 2021 – a Tuesday – and not over the weekend, as defendant asserts in her response. Third, the description of GEX 9 in the JEL filed with the Court described the exhibit as: "Email Dated June 7, 2016 from Marie Dalton to Atiq Ahmed Attaching '[T]he documents that we discussed on the phone.'" This description provided defendant with more than sufficient notice that the June 7, 2016 email from Ms. Dalton to Mr. Ahmed had documents attached to it. Fourth, sufficient foundation was established during the evidentiary hearing to admit the documents attached to the June 7, 2016 email from Ms. Dalton to Mr. Ahmed. Ms. Dalton testified that during a phone call, Mr. Ahmed requested discovery from the United States. Ms. Dalton provided this discovery to Mr. Ahmed by attaching the documents that comprised the discovery to her June 7, 2016 email to Mr. Ahmed. Mr. Ahmed corroborated Ms. Dalton's version of events during his testimony. Ms. Dalton and Mr. Ahmed's testimony provided the foundation necessary to support the admissibility of the documents attached to Ms. Dalton's June 7, 2016 email to Mr. Ahmed. Fifth, in her response to the Report, defendant did not allege or explain how she would be unfairly prejudiced by the admission of the documents attached to Ms. Dalton's June 7, 2016 email. *See Williams*, 358 F.3d at 963.

Moreover, during the evidentiary hearing, both parties used GEX 9 and some of the documents attached to them during their witness examinations. In fact, after defendant raised her objection to the admissibility of GEX 9 on April 21, 2021, she used GEX 9 during her cross examination of Mr. Ahmed on April 23, 2021. Thus, any objections defendant had to GEX 9 were waived.

For these reasons, the United States submits that the Court should admit the documents attached to Ms. Dalton's June 7, 2016 email to Mr. Ahmed.

### B. The Court Should Not Exclude GEXs 43-62 and 75 from Evidence

To the extent the Court granted defendant's motion to strike GEXs 43-62 and 75, the United States submits that those exhibits should remain in evidence. In her appellate briefs and during the evidentiary hearing, defendant placed her ability to communicate in English at issue. Reply Br. at 2 (arguing that defendant could not correct the Court during her plea colloquy or afterward because "the accused speaks a foreign language, (in this case Arabic), and the written plea is in English. Her lawyer does not speak Arabic"), 9 (arguing that Eighth Circuit's opinion in *Abraham v. United States* "does not apply here because it appears that the defendant in *Abraham* spoke English and therefore did not have the communication problems at issue here"). In fact, in her rebuttal case, defendant called her immigration attorney, James Roberts, to establish that she spoke Arabic when she communicated with Mr. Roberts and his staff.

The documents that comprise GEXs 43-62 and 75 are relevant to establishing defendant's proficiency with the English language. Defendant's former employer, Kazi Islam, testified that when he hired defendant, he required defendant to review and sign a number of different documents, all of which were in English. Mr. Islam also testified that defendant's ability to communicate in English was a pre-requisite to her working at E&R Home Care, and that he would not have hired her if she could not communicate in English because the State of Virginia required him to hire English-speaking employees.

On cross examination, defendant admitted that she reviewed and signed GEXs 53 and 54 when she worked at E&R Home Care. GEXs 43-52, 55-62, and 75 are other English-language forms that defendant completed for E&R Home Care. All or almost all of these documents bear

8

defendant's signature.  By signing these documents, defendant represented to E&R Home Care that she understood the contents of the documents, and that she was proficient enough in English to make informed decisions about her own health and legal rights, such as waiving her right to vaccinations and entering into a non-compete agreement with E&R Home Care.  These forms all show that defendant's ability to comprehend English was far greater than defendant has claimed in her appellate briefs or during the evidentiary hearing and thus are relevant to her ineffective assistance of counsel claim.  While the United States appreciates that the Court may not give GEXs 43-62, and 75 much weight, defendant has asserted no valid ground for excluding these exhibits from evidence.

      Additionally, the exclusion of GEXs 43-62, and 75 would prejudice the United States.  As the United States argued at the evidentiary hearing, the United States prepared its case and its witness list based on defendant's representations that she would not object to the admissibility of GEXs 43-62, and 75.  Defendant signed the JEL and represented that she agreed to the admissibility of all the exhibits on the JEL (except for GEX 80-93), and her counsel moved for the admission of GEXs 43-62 and 75 at the beginning of the hearing.  It was only at the end of the United States' case-in-chief that defendant objected to the admission of GEXs 43-62 and 75.  Had the United States known defendant was going to object to GEXs 43-62 and 75, it would have added the witnesses necessary to admit all of these exhibits to its witness list and called them at the hearing.

//
//
///

**III.   CONCLUSION**

For the above reasons, the United States submits that the Court should admit the documents attached to the June 7, 2016 email contained in GEX 9 and, to the extent the Court struck the exhibits, allow GEXs 43-62 and 75 to remain in evidence.

                                      Respectfully submitted,

                                      DEBORAH CONNOR, CHIEF
                                      MONEY LAUNDERING & ASSET
                                      RECOVERY SECTION

By:    /s/
           JONATHAN T. BAUM
           Senior Trial Attorney, Criminal Division
           Money Laundering and Asset Recovery Section
           United States Department of Justice
           1400 New York Avenue, NW
           Washington, DC 20005
           Telephone: (202) 616-9628
           Email: jonathan.baum@usdoj.gov

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of April 2021, I caused a copy of the foregoing report to be served by electronic mail on defendant's counsel:

Kira Anne West
Law Office of Kira Anne West
Email: kiraannewest@gmail.com

                                                                  _____
                                                                  Jonathan T. Baum
                                                                  Senior Trial Attorney, Criminal Division
                                                                  Money Laundering and Asset Recovery Section
                                                                  United States Department of Justice